UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WALTER E. TRUMBLE,<br><br>                Plaintiff,<br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant. | Case No. C09-5096FDB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 26, 2010 |

Plaintiff, Walter E. Trumble, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is 58 years old.[1] Tr. 37. He has a tenth grade education and past relevant work experience as retail sales clerk. Tr. 34, 95, 97, 157.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION - 1

On February 28, 2005, plaintiff filed an application for disability insurance benefits, alleging disability as of April 1, 1997, due to problems with his lower back, legs and neck. Tr. 30, 43, 89. His application was denied initially and on reconsideration. Tr. 30, 37-38, 39EE, 39HH. A hearing was held before an administrative law judge ("ALJ") on August 8, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 153-79.

On October 25, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability through June 30, 1998, his date last insured[3];

(2) at step two, through his date last insured, plaintiff had "severe" impairments consisting of L4-5 spondylolisthesis and status post L4-5 fusion with Steffe plate implant;

(3) at step three, through his date last insured, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, through the date last insured, plaintiff had the residual functional capacity to perform the full range of light work; and

(5) at step four, through the date last insured, plaintiff's past relevant work did not require the performance of work-related activities precluded by his residual functional capacity.

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3] To be entitled to disability insurance benefits, a claimant must establish that his or her disability "existed on or before" the date his or her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). In this case, plaintiff's date last insured was June 30, 1998. Tr. 30, 37. Therefore, to be entitled to disability insurance benefits, plaintiff must establish he was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

REPORT AND RECOMMENDATION - 2

Tr. 30-35. Plaintiff's request for review was denied by the Appeals Council on December 19, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981.

On February 20, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on May 5, 2009. (Dkt. #7). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

    (a)    the ALJ failed to fully and fairly develop the record;

    (b)    ALJ erred in evaluating the medical evidence in the record;

    (c)    the ALJ erred in assessing plaintiff's credibility;

    (d)    the ALJ erred in evaluating the lay witness evidence in the record;

    (e)    the ALJ erred in assessing plaintiff's residual functional capacity;

    (f)    the ALJ erred in finding plaintiff capable of performing his past relevant work; and

    (g)    the Commissioner failed to meet his burden of showing plaintiff could perform any work existing in the national economy.

For the reasons set forth below, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled, if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v.

REPORT AND RECOMMENDATION - 3

Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ Fully and Fairly Developed the Record

An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). It is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," though, that the ALJ's duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted). On August 11, 1988, a different ALJ determined plaintiff to be disabled based on a previous application for disability insurance benefits he had filed. See Tr. 18-21. At the hearing in this matter, plaintiff's counsel provided the ALJ with a copy of that decision. Tr. 155-56.

In regard to that decision, the ALJ stated at the time as follows:

> . . . The [record] shows . . . a prior period of disability. And counsel has submitted the [previous ALJ's] decision . . . identifying both severe spondylosis stesis L4/5 and a dystemic [sic] or depressive disorder as the basis of disability. Claimant['s disability] was ceased in 1997 and as I read it, the basis for the cessation was failure to comply. So even though counsel has submitted [the] decision, . . . it's not relevant to the issue presented here so I'm not going to put that into evidence. . . .

Id. The ALJ in this matter made no mention of that previous disability decision in his own written decision, which plaintiff argues was error. Specifically, plaintiff asserts that previous decision is relevant, because it shows he previously had been found disabled based on a mental impairment, whereas the current ALJ found no severe mental impairment.

REPORT AND RECOMMENDATION - 4

The undersigned finds no error here. Plaintiff fails to point to, nor does the record before the Court contain, any evidence that since his previous determination of disability was ceased in 1997, he has had a continuous mental impairment causing significant work-related limitations. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that has lasted or can be expected to last for continuous period of not less than twelve months). In early April 1988, plaintiff was diagnosed by Sean M. Killoran, M.D., with a chronic dysthymic disorder, and was noted to present as being chronically depressed. Tr. 26. Dr. Killoran further found in relevant part at the time that:

> . . . At this point his depression is manifested by his lack of self-confidence, difficulty in concentrating and lowered self-esteem and adversely effects [sic] his ability to find and maintain employment.
>
> . . .
>
> The severity of his symptoms appear at the present time to impair his ability to find and maintain himself in gainful employment. His lowered self-esteem and sense of failure would sabotage his ability to function effectively on a job. He has no concept or even vague goals with regard to vocational interests and before employment is considered, vocational counseling and training would be necessary.

Id. There is no further mention of depression, a dysthymic disorder or any other mental health condition in the medical evidence in the record. Indeed, in his current application for disability benefits, plaintiff does not even allege a mental impairment as a basis therefor. Accordingly, the undersigned finds the previous ALJ's decision, which was dated some ten years prior to the date last insured at issue in this case, was, as found by the current ALJ, irrelevant to the determination of plaintiff's disability in this case. As such, the undersigned further finds the ALJ committed no error in not mentioning or considering that previous decision in his analysis. See Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss all

REPORT AND RECOMMENDATION - 5

evidence presented to him or her, but must only explain why significant probative evidence has been rejected).

For the same reason, the undersigned also rejects plaintiff's contention that the ALJ erred by failing to obtain, and include in the record, his disability file from his previous claim. That is, plaintiff has made no showing, nor does the record at all indicate, that other than Dr. Killoran's evaluation report, that "disability file" contains any relevant information with respect to a continuing mental impairment. Finally, the undersigned finds, contrary to plaintiff's assertion, that the ALJ did not refuse to allow his attorney to fully question him about his symptoms and limitations at the hearing. Rather, the ALJ gave plaintiff's attorney the opportunity to do so, but it appears it was plaintiff's attorney who decided to stop questioning plaintiff after only posing a few inquiries. See Tr. 160-61.

II. The ALJ Properly Evaluated the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this

REPORT AND RECOMMENDATION - 6

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent, 739 F.2d at 1394-95(citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute

REPORT AND RECOMMENDATION - 7

substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Birchard

Plaintiff was seen in early October 2000, by Carl R. Birchard, M.D., who diagnosed him with "[c]ontinued back pain with no signs of radiculopathy." Tr. 107. Although x-rays showed "a Grade II spondylolisthesis," and "increasing changes in" plaintiff's "discs" indicated he was "developing some progressive degenerative disc disease," his physical examination was largely unremarkable. Tr. 108. In addition, Dr. Birchard "[s]trongly encouraged" plaintiff "to maintain a level of exercise," and told him that while he should "[a]nticipate some discomfort" he should "push activities" anyway. Tr. 107. Dr. Birchard felt as well that plaintiff might "benefit from [a] lumbar brace or corset type brace for more strenuous type activities and walking." Id. Plaintiff also reported that he helped "in his wife's restaurants [sic] . . . busing tables, doing dishes," and doing "prep work," and that although he paced himself, he worked "perhaps three to four hours" before resting. Id.

The ALJ gave "little weight to the functional limitations cited by" Dr. Birchard "in his report,"[4] because those "observations were made over two years after" plaintiff's "insured status

---

[4] It appears the "functional limitations" the ALJ refers to here, appear to come from the patient "[h]istory" section of the progress note completed at the time, in which Dr. Birchard wrote in relevant part as follows:

> [Plaintiff] feels he is getting gradually worse. He had a slip and fall recently that aggravated symptoms somewhat but have since settled back to where they were before the fall.
>
> He notes he is limited in walking and standing. He is disabled from work . . . He notes he hurts when driving, sitting for any length of time, walking. He does walk with his wife but finds that half a mile in one direction and return is about as much as he can tolerate.
>
> . . .
>
> . . . activity tends to aggravate the pain. . . . He gets relief by recumbency, change of position, sitting back in a recliner chair. Activities that aggravate pain are standing, riding in a car, walking, any type of bending or lifting.

Id.

REPORT AND RECOMMENDATION - 8

expired on June 30, 1998." Tr. 34. Plaintiff argues the ALJ erred in so finding. The undersigned disagrees. First, plaintiff asserts Dr. Birchard should be considered a treating physician even though there is only one progress note from him in the record, arguing that Dr. Birchard "clearly made efforts to cure" on that one occasion by recommending a lumbar brace, encouraging him to exercise and giving him samples of medication. (Dkt. #17, p. 12). But these "efforts to cure" are no different than those an emergency room physician might make, whose goal also clearly is to cure or treat the medical problem presented, but who unquestionably would not be considered a treating physician in the sense employed here.

While it may be true that the number of visits alone is not definitive as to the existence of a treating relationship, there simply is no convincing evidence or indication in the record that such a relationship developed between plaintiff and Dr. Birchard. As such, the ALJ was not required to accord Dr. Birchard's clinical findings and opinions the traditional deference given to those of treating physicians. Plaintiff further asserts that Dr. Birchard wrote that he was disabled from work. However, it is clear as noted above that Dr. Birchard was merely recording what plaintiff himself told him. See Tr. 107. The mere fact that Dr. Birchard found plaintiff had an underlying medical condition, furthermore, alone is not sufficient to establish disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability.").

Plaintiff also finds important the lack of any statement by Dr. Birchard questioning the validity of his self-reporting regarding his symptoms and level of activities. But this only means Dr. Birchard did not express any such suspicion. In addition, even if Dr. Birchard's silence on the issue can be taken as an unexpressed belief that plaintiff was telling the truth, this does not at all mean he felt plaintiff was disabled or otherwise as physically limited as plaintiff indicated.

REPORT AND RECOMMENDATION - 9

Indeed, as noted above, Dr. Birchard actually encouraged plaintiff to become more active, even though such activity might result in increased pain, and plaintiff himself reported that he worked in his wife's restaurant for three to four hours at a time. The ALJ, furthermore, as explained in greater detail below, was not required to adopt any opinion Dr. Birchard might have concerning plaintiff's subjective complaints, and committed no error in not doing so.

Accordingly, the ALJ was not remiss in declining to adopt any of the clinical findings or opinions provided by Dr. Birchard in early October 2000, due to the fact that they were made more than two years after plaintiff's date last insured. Medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability" during that period. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) (because such reports inevitably are rendered retrospectively, they should not be disregarded solely on that basis); Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975). However, "claimants who apply for benefits for a current disability after the expiration of their insured status" will be entitled to them only if they can "prove that the current disability has existed continuously since a date on or before the date that their insurance coverage lapsed." Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1462 (9th Cir. 1995). Nothing in Dr. Birchard's early October 2000 progress report relates back to the period prior to or as of plaintiff's date last insured.

B.   Dr. McCurry

In late January 2001, plaintiff was seen by Kevin W. McCurry, M.D., who found "diffuse lumbar tenderness" with straight leg raising on the right causing "low back symptoms," which radiated "toward the knee." Tr. 127. Dr. McCurry diagnosed plaintiff with degenerative disc and joint disease. Id. In addition, Dr. McCurry gave plaintiff "a note excusing him from jury duty," and filled out forms for a "disability hunting license" he had requested. Id. No mention of these

REPORT AND RECOMMENDATION - 10

findings or the visit was made by the ALJ in his decision, which plaintiff argues constitutes error. Again, the undersigned disagrees.

Plaintiff asserts Dr. McMurry wrote that he found it difficult to stay in one position for very long. Once more, however, this is merely a report of what plaintiff himself was relating (see id.), and does not itself constitute objective medical evidence. See 20 C.F.R. § 404.1529(a). Nor was the ALJ required, for the same reason discussed above, to believe that self-report. Also as discussed above, a mere diagnosis is an insufficient basis on which to establish disability for Social Security purposes. So too with respect to the note excusing plaintiff from jury duty, since there is no explanation for the basis of that note, nor any indication as to how long a period that note was supposed to remain in effect. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that has lasted or can be expected to last for continuous period of not less than twelve months).

Interestingly, plaintiff fails to point to a subsequent progress noted from mid-July 2001, in which Dr. McCurry diagnosed plaintiff with a left medial meniscal injury, but found "minimal degenerative changes," and "minor" joint tenderness in his knees, with little to no effusion, joint laxity or joint space loss. Tr. 125. Plaintiff also reported working "in the family restaurant 12 hours a day," and being "on his feet on cement for six hours of that time." Id. Finally, even if either of Dr. McCurry's progress notes can be seen as being consistent with the clinical findings and opinions of Dr. Birchard – though plaintiff does not explain in what way they are consistent – those findings and opinions were properly rejected by the ALJ. Dr. McCurry's progress notes, furthermore, are even more remote in time than those of Dr. Birchard. As such, they do not constitute significant probative evidence the ALJ was required to discuss, or – to the extent he was so required – any failure to do so was harmless. See Stout v. Commissioner, Social Security

REPORT AND RECOMMENDATION - 11

Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

C. Dr. McBride

The medical expert at the hearing, Dr. Frank McBride, testified that although plaintiff felt he was disabled he could not see why this was so, and that plaintiff was capable of performing work at the light exertional level. Tr. 170. In his decision, the ALJ stated that Dr. McBride also testified that there was nothing "in the medical evidence of record citing significant symptoms and limitations . . . as of June 30, 1998." Tr. 34. The ALJ further stated that "[g]iven the record," Dr. McBride opined that plaintiff "could do light work considering the symptoms which he could reasonably expect from his impairments as of" that date. Id.

Plaintiff argues the ALJ erred in ignoring Dr. McBride's further testimony that he agreed that the symptoms plaintiff reported to Dr. Birchard were reasonably related to his back problem and deconditioning. See Tr. 171-72. But this is a far cry from testifying that the medical or other evidence in the record actually supports those symptoms, or that such symptoms had resulted in significant work-related limitations prior to the date last insured. The same is true with respect to Dr. McBride's testimony that someone who had a longstanding back problem causing them to be physically inactive, could reasonably be expected to experience depression. See Tr. 176. As such, none of this testimony undermines the ALJ's decision here.

Plaintiff also makes much of Dr. McBride's testimony that Dr. Birchard's findings and opinions were "sure close enough," in response to the ALJ's inquiry as to whether there was any objective medical findings supporting plaintiff's alleged symptoms and limitations prior to or as of his date last insured. Tr. 174. After the ALJ noted that those findings and opinions were dated two years subsequent thereto, Dr. McBride responded by stating "[o]kay, I got it, thank you." Tr.

REPORT AND RECOMMENDATION - 12

175. Plaintiff takes this as an attempt by the ALJ to direct Dr. McBride away from the findings and opinions of Dr. Birchard, but the transcript of the hearing wholly fails to support this. That is, the undersigned finds nothing wrong in the ALJ pointing out to Dr. McBride the actual date of Dr. Birchard's progress note.

The undersigned thus also rejects plaintiff's assertion that Dr. McBride "never recanted his testimony that the dates were close enough for Dr. Birchard's opinion to be probative for the period at issue," and that the Court should find Dr. McBride's testimony supports "a finding that prior to his date last insured," he "had medical conditions that would reasonably be expected to cause him to change positions and recline to relieve his back pain." (Dkt. #17, pp. 12, 14). Even if this last assertion were true, furthermore, the fact that a medical condition exists, which would reasonably be expected to cause certain symptoms, does not mean it actually does so. Therefore, the undersigned finds the ALJ properly evaluated the medical evidence in the record.

### D. Dr. Harper

In regard to medical opinion source evidence that is in fact dated prior, or relevant to, the expiration of plaintiff's insured status, George R. Harper, M.D., found in early October 1996, that he had "some slight generalized swelling," as well as tenderness, in his right greater toe. Tr. 148. The ALJ noted this record, but stated it included "no statement regarding debilitating back pain." Tr. 34. Plaintiff points out he reported at the time that "his back discomfort was relieved a good deal by his Feldene as well as relieving his foot pain." Tr. 148. He argues this comment indicates Dr. Harper considered his back pain significant enough for him to suggest he should continue to take the Feldene. But what that comment really shows is that plaintiff got significant pain relief therefrom, and that while Dr. Harper certainly may have been aware of plaintiff's pain complaints, there is no indication he felt them to be continuing.

REPORT AND RECOMMENDATION - 13

III. The ALJ Did Not Err in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

Plaintiff argues the ALJ failed to state any specific and legitimate, let alone clear and

REPORT AND RECOMMENDATION - 14

convincing, reasons for discounting her credibility. The undersigned disagrees. First, the ALJ noted that plaintiff "could not accurately recall his situation from his February 1990 L4-5 fusion surgery to June 30, 1998[,] when his insured status . . . expired." Tr. 34. Plaintiff argues this is not an accurate description of his testimony, pointing out that he also testified that he had never recovered to the point where he was able to be on his feet for a full day, that during the relevant time period it was a problem for him to sit in a normal chair upright and that there had not been any change in his condition from the two to three year time period following his surgery to the date of the hearing. See Tr. 159-61.

But this statement too is not exactly an accurate description plaintiff's testimony. For example, plaintiff testified that he could not "remember specifically how" he was doing "in June of '98 or June of '97 or May of 2000." Tr. 160-61. As such, the ALJ was not out of line in finding plaintiff to be unable to remember with any reliable degree of certainty what his condition was prior to or as of his date last insured. Given that it is solely the ALJ's responsibility to resolve any conflicts or ambiguities concerning credibility or the evidence in the record, the Court may not second guess the ALJ's decision on this issue, and the undersigned declines to do. Rather, the undersigned finds the ALJ properly discounted plaintiff's credibility regarding his subjective complaints for this time period on that basis. See also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (upholding ALJ's adverse credibility determination in part on ALJ's finding claimant to be vague witness in regard to alleged period of disability and was not clear or certain as to his own work capabilities).

The ALJ also properly discounted plaintiff's credibility on the basis that there were "no chart notes or other medical evidence of record regarding" his "symptoms as of the expiration of his insured status." Tr. 34; see Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th

REPORT AND RECOMMENDATION - 15

Cir. 1998) (determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement). Plaintiff points to the findings and opinions of Dr. Birchard, but as discussed above, the ALJ properly noted they were too remote with respect to the relevant time period in this case. Nor, also as discussed above, did Dr. McBride maintain that those findings and opinions were "sure close enough" to that period to support the presence of significant work-related limitations during that period.

IV. The ALJ's Evaluation of the Lay Witness Evidence in the Record Was Proper

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains lay witness statements from plaintiff's long-time friend and from his sister-in-law regarding their observations of his mental and physical symptoms and limitations. See Tr. 58-73. Plaintiff argues the ALJ erred in failing to mention – let alone state any reasons for rejecting, these statements in his decision. But, as noted above, the ALJ need not discuss all evidence presented, but must only explain why significant probative evidence has been rejected. Vincent, 739 F.3d at 1394-95. As pointed out by defendant, neither of the lay witness statements discussed plaintiff's condition in regard to the relevant time period.

REPORT AND RECOMMENDATION - 16

Plaintiff argues this is an improper *post hoc* rationale put forth by the Commissioner. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss). While it is true the ALJ did not state this as a reason for not discussing or rejecting the two lay witness statements, plaintiff has not shown the probative value, if any, of those statements. Indeed, because they do not discuss the period prior to or as of plaintiff's date last insured, they have no such value. The ALJ thus was not under any obligation to address, or state any reasons for rejecting, them in his decisions.

V.      The ALJ Did Not Err in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ found that "through his date last insured," plaintiff had the

REPORT AND RECOMMENDATION - 17

residual functional capacity "to perform the full range of light work." Tr. 33. Plaintiff argues this RFC assessment is erroneous, because the ALJ failed to include therein any limitations based on the testimony of Dr. McBride or his own subjective complaints. As discussed above, however, the ALJ did not err in finding that Dr. McBride's testimony supported the residual functional capacity with which he assessed plaintiff, nor did the ALJ err in discounting plaintiff's credibility regarding his symptoms and limitations. Because the ALJ was not required to discuss the non-probative lay witness statements in the record from plaintiff's friend and sister-in-law, he also did not have to adopt any limitations stemming therefrom.

VI. The ALJ Properly Found Plaintiff Could Perform Her Past Relevant Work

Also as noted above, the ALJ found that through his date last insured, plaintiff's "past relevant work as a retail sales clerk did not require the performance of work-related activities precluded by" his residual functional capacity. Tr. 34. Plaintiff argues this finding is erroneous as well, due to the ALJ's failure to properly evaluate the objective medical and other evidence in the record. Again as discussed above, though, the ALJ did not commit any errors in evaluating that evidence. Plaintiff notes that in response to a hypothetical question posed at the hearing, the vocational expert testified that a person who needed to recline every hour or so for 15 minutes, would be unable to perform his past relevant work. Tr. 178. But plaintiff fails to show that the substantial evidence in the record supports any such limitation. Accordingly, the ALJ did not err in finding him capable of performing his past relevant work.

VII. Step Five of the Sequential Disability Evaluation Process

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20

REPORT AND RECOMMENDATION - 18

C.F.R. § 404.1520(d), (e).  Plaintiff argues that because the ALJ erred in finding him capable of performing his past relevant work, the burden shifted to the Commissioner to establish he could perform other work at step five.  But, as just discussed, the ALJ did not so err, and thus was not required to go on to step five.  See 20 C.F.R. § 404.1520 (if claimant is found not disabled at any step of sequential disability evaluation process, disability determination is made at that step and sequential evaluation process ends).

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed set this matter for consideration on **March 26, 2010**, as noted in the caption.

DATED this 23rd day of February, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19